**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------------------X
ISAAC LEVIN and OFRA LEVIN,

                               Plaintiffs,

     -against-

AMERICAN DOCUMENT SERVICES, LLC
TODD C. JOHNSON, JOYCE BREUNINGER,
LENDER PROCESSING SERVICES, INC.,
DOCX, LLC, BLACK KNIGHT FINANCIAL
SERVICES, and WELLS FARGO BANK, N.A.,
as TRUSTEE FOR OPTION ONE MORTGAGE
LOAN TRUST 2007-1, ASSET-BACKED
CERTIFICATES, SERIES 2007-1,

                               Defendants.
--------------------------------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★    MAR 06 2017    ★

LONG ISLAND OFFICE

Docket #

CV 17 1285

BIANCO, J.

SHIELDS, M.J.

## COMPLAINT FOR DAMAGES AND DEMAND FOR NON-JURY TRIAL

Plaintiffs, ISAAC LEVIN and OFRA LEVIN, (hereinafter referred to as "Levins"), individually, and via *Pro Se* submission, bring this Complaint for Damages and Demand for a Non-Jury Trial against Defendants AMERICAN DOCUMENT SERVICES, LLC (hereinafter referred to as "ADS"), TODD C. JOHNSON (hereinafter referred to as "Johnson"), JOYCE BREUNINGER (hereinafter referred to as "Breuninger"), LENDER PROCESSING SERVICES, INC. (hereinafter referred to as "LPS"), DOCX, LLC (hereinafter referred to as "DocX"), BLACK KNIGHT FINANCIAL SERVICES (hereinafter referred to as "Knight"), and WELLS FARGO BANK, N.A., as TRUSTEE FOR OPTION ONE MORTGAGE LOAN TRUST 2007-1, ASSET-BACKED CERTIFICATES, SERIES 2007-1 (hereinafter referred to as "Wells Fargo") (collectively referred to as "Defendants"), and in support of their claims, state the

following:

## INTRODUCTION

Levins' claims in this action are a direct and proximate result of Defendants' and/or their corporate predecessors and successors negligent, willful, and wrongful conduct in the execution of, recording of and reliance upon intentionally unauthorized, improper and fraudulent security instruments relating to the Levins' property located at 960 Cliffside Avenue, Valley Stream, New York 11581 (hereinafter referred to as the "subject property). Defendants have engaged in a pattern and practice of creating, notarizing and recording multiple fraudulent mortgage security instruments and other related documents in order to assist mortgage lenders and other financial institutions in the illegal foreclosure of homeowners' properties, including Levins' homestead property. Specifically, Defendants improperly executed, notarized, and recorded assignments of mortgage upon which Wells Fargo, and servicers relied in the course of pursuing foreclosure proceedings on behalf of the securitization trusts that owned (or allegedly owned) the loans to the detriment of homeowners such as the Levins.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

2. Venue is proper in the United States District Court for the Eastern District of New York under 28 U.S.C. §1391(b)(2), which states that venue is proper in "a judicial

district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."

3. Additionally, venue is proper in the United States District Court for the Eastern District of New York under 28 U.S.C. §1391(b)(3), which states that venue is proper "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

4. Defendants are subject to the court's personal jurisdiction under 28 U.S.C. §1391(d), which states "For purposes of venue under this chapter, in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts."

PARTIES TO THE ACTION

5. Plaintiff Isaac Levin is *sui juris* before this court, a natural person over the age of 18, and a citizen residing in this district.

6. Plaintiff Ofra Levin is *sui juris* before this court, a natural person over the age of 18, and a citizen residing in this district. Ofra and Isaac Levin are husband and wife and reside at the homestead property since 1983.

7. Defendant American Document Services, LLC is, and was at all times material herein, a California-based document preparation company which specifically handled documentation relating to real estate transactions and recording services.

8. Defendant Todd C. Johnson is *sui juris* before this court, a natural person over the age of 18, and at all relevant times material herein, was Executive Vice President of Defendant Lender Processing Services, Inc. Johnson also appears on all other entities of Lender Processing Service, LLC., such as ANFI[1], LLC. and American Document Services, Inc., prior to its converting out to American Document Services, LLC.

9. Defendant Joyce Breuninger is *sui juris* before this court, a natural person over the age of 18, and at all relevant times was Chief Executive Officer for Defendant American Document Services, LLC.

10. Defendant Lender Processing Services, Inc. is, and was at all relevant times, a Delaware-based corporation that provides-either independently or through its affiliates- mortgage document processing services, settlement services, mortgage performance analytics, and mortgage default services to lenders and mortgage servicing companies.  LPS is registered to do business in the State of Delaware and upon information and belief maintains its headquarters and principal place of business at 601 Riverside Avenue, Jacksonville, Florida 32204.

---

[1] Todd Johnson appears, among others, as Secretary of American Document Services, Inc., Executive Vice president of Lender Processing Services, Inc., Secretary of Anfi, Inc., Secretary of Anfi, LLC(despite the fact that Anfi, LLC registration could not be located) and a member of American Document Services, Inc prior to its being converted-out to American Document Services LLC.

11. Defendant DOCX, LLC is, and at all times relevant herein, was a Georgia-based limited liability company that provides document processing services for lenders and mortgage servicing companies. DocX is a division of LPS, registered in Georgia and its principal place of business is at 601 Riverside Avenue, Jacksonville, Florida 32204. Upon information and belief, DocX began providing document processing services for Option One Mortgage Corporation in January 2008. In this capacity, DocX processed lien releases and related documents, including assignments of mortgage for American Home Mortgage Servicing, Inc.

12. Defendant Black Knight Financial Services is a Florida-based corporation that provides integrated technology, services, data and analytics solutions to the mortgage and real estate industries. On January 3, 2014, Fidelity National Financial acquired LPS, renaming it Black Knight Financial Services.

13. Defendant Wells Fargo Bank, N.A. is a national headquartered, according to its articles of association[2], in South Dakota.

RELEVANT FACTUAL ALLEGATIONS

14. On August 14, 2006, Plaintiff Ofra Levin executed a mortgage in favor of Superior Home Mortgage Corporation. Said mortgage was recorded on September 26, 2006. *A true and correct copy of said mortgage instrument is attached hereto as "Exhibit A."*

---

[2] Articles of Associations of Wells Fargo Bank, National Association, art II, ¶ 1, available at https://www. sec.gov/Archives/edgar/data/1510890/000119312511014456/dex991.htm.

15. As indicated, said mortgage instrument was notarized by Audrey J. Thompson, but Audrey J. Thompson was not present at the closing and therefore Ofra Levin did not appear in front of Audrey J. Thompson.

16. An Assignment of Mortgage was recorded in the Office of the Nassau County Clerk on July 7, 2008 which purports to transfer Levins' mortgage from Superior Home Mortgage Corp. to Option One Mortgage Corporation (hereinafter referred to as the "Fraudulent Assignment"). *A true and correct copy of said Assignment of Mortgage is attached hereto as "Exhibit B."*

17. Said Assignment of Mortgage is dated February 26, 2008 and was allegedly executed by Brian Voglesong, Sr. Vice President for Superior Home Mortgage[3].

18. Said Assignment of Mortgage was prepared by and sent to the County Clerk for recording by American Document Service LLC.

19. Brian Voglesong never executed the Fraudulent Assignment. *A true and correct copy of e-mail correspondence and an affidavit of Brian Voglesong dated January 31, 2017 to Levins confirming same are attached hereto as "Exhibit C."*

20. Upon information and belief, the assignment from Superior Home Mortgage Corp. to Option One Mortgage Corp. was forged and filed with the County Clerk of Nassau County by ADS, utilizing the employees of LPS. According to the Department of Justice, Lorraine Brown participated "in a six-year scheme to prepare and file more than 1 million fraudulently signed and notarized mortgage-related documents with property recorders' offices throughout the United States."

---

[3] Brian Voglesong was Executive Vice President of Superior Mortgage and not Sr. Vice President.

21. It is undisputedly clear that Brian Voglesong did not sign the assignment, and therefore Brian Voglesong could have not appeared before the Notary, Deborah Deeney, on May 23, 2008.

22. Upon information and belief, said notary was signed by employee of LPS, which does not have notary authorization and never by Deborah Deeney as indicated on the assignment.

23. Deborah Deeney was at all relevant times a notary in the state of New Jersey while the notary indicated that it was notarized under the "laws of the state of California." Furthermore, her rubber stamp does not appear suggesting that the person who signed in the name of Deborah Deeney had no knowledge of her notary number.

24. On or about April 30, 2009, another Assignment of Mortgage was prepared and recorded with the County Clerk of Nassau County which purported to transfer the mortgage from American Home Mortgage Servicing, Inc. as successor in interest to Option One Mortgage Corporation to Wells Fargo, N.A. Said Assignment of Mortgage was recorded on May 7, 2009. *A true and correct copy of said assignment is attached herein as "Exhibit D."*

25. On or about June 15, 2009, Wells Fargo initiated its first foreclosure action against Levins. Said foreclosure action was filed based on Wells Fargo's unjustified reliance on the fraudulent assignment of mortgage referenced in *Exhibit D*. Wells Fargo's action was discontinued in August 2010 as a result of deficiencies with the Assignment of Mortgage and Wells Fargo's inability to prove its requisite standing.

Specifically, Wells Fargo failed to prove it was the holder/owner of the Note and Mortgage being foreclosed on.

26. The Assignment of Mortgage to Wells Fargo was purportedly made by American Home Mortgage Servicing Inc., as the successor of Option One Mortgage Corporation to Wells Fargo, as trustee, on April 30, 2009 and signed by Karell Harp, in his alleged capacity as Vice President of American Home Mortgage Servicing, Inc., and Tywana Thomas, in her alleged capacity as Asst. Vice President of American Home Mortgage Servicing Inc.

27. Karell Harp and Tywana Thomas never worked for American Home Mortgage Servicing, Inc., but upon information and belief, they did work for DocX.

28. The Assignment of Mortgage was made while Harp and Thomas were employees of DocX.

29. Upon information and belief, Tywana Thomas does not exist.

30. At all relevant times, Wells Fargo knew or should have known that the assignment was fraudulent but failed to remove the assignment from the land records.

31. On July 20, 2010, Wells Fargo by an affidavit of their attorney, John Gable, informed the Nassau County Supreme Court that the mortgage was infirm, but failed to inform the court that the assignment was created by the robo signors of DocX. Despite knowledge by Wells Fargo of the standing consent order of the federal government and the consent orders of 44 states, Wells Fargo failed to address the issue of the robo signed assignment or move to remove the fraudulent document from the land records.

Wells Fargo elected to provide the fraudulent assignments to Nassau County Supreme Court on March 30, 2015 and to the E.D.N.Y on September 30, 2015.

32. After the discontinuation of Wells Fargo's first foreclosure action, Plaintiffs became aware of another alleged transfer of the mortgage instrument to Wells Fargo Bank, N.A., as Trustee for Option One Mortgage Loan Trust 2007-1, Asset-Backed Certificates, Series 2007-1.

33. A 'Corrected' Assignment of Mortgage was executed on November 11, 2010 and filed in the Office of the Nassau County Clerk on December 20, 2010. *A true and correct copy of said Corrected Assignment of Mortgage is attached hereto as "Exhibit E."* Said Corrected Assignment of Mortgage purports to transfer the mortgage from Sand Canyon Corporation, formerly known as Option One Mortgage Corporation to Wells Fargo Bank, N.A., as Trustee for Option One Mortgage Loan Trust 2007-1, Asset-Backed Certificates, Series 2007-1.

34. The 'Corrected' Assignment of Mortgage was prepared by and sent for recording by McGlinchey Stafford PLLC, the law firm representing Wells Fargo.

35. The 'corrected' assignment attempts to correct the 2nd assignment from American Home Mortgage Servicing Inc. to Wells Fargo, knowingly signed by the robo signers, Karell Harp and Tywana Thomas, and it also pretends to suggest that it relies upon the 1st fraudulent assignment by Brian Voglesong.

36. The 'corrected' assignment also states that "Which Mortgage was assigned to Assignor by assignment from Superior Home Mortgage Corp. a/k/a Superior Home Mortgage Corp. dated the 26 day of February, 2008 and recorded on July 7, 2008 at

the Office of the Nassau County Clerk in Book M33107 at Page 877, together with the bond or obligation described in said Mortgage, and the moneys due and to grow due thereon with the interest, T0 HAVE AND TO HOLD the same unto the Assignee and to the successors, legal representatives and assigns of the Assignee forever."

37. Hence, there never was a valid transfer of Levins' mortgage or bond from Superior Home Mortgage Corp. to Option One Mortgage Corp., and therefore Sand Canyon f/k/a Option One Mortgage Corporation had nothing to assign to Wells Fargo.

38. Therefore, the Fraudulent Assignment and other assignments described herein are void and a transfer of mortgage interest was **never** made to Wells Fargo.

39. It has been alleged in separate litigated matters that Wells Fargo is now the owner and/or holder of the Note and mortgage.

40. Based on the Fraudulent Assignment(s) of Mortgage prepared by and sent for recording by Defendants, there is a clear break in the chain of title of the subject property.

41. On April 13, 2011, the Board of governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, the Officer of Comptroller of the Currency and the Office of Thrift Supervision entered a consent order in the matter of Lender Processing Services, Inc., DocX, LLC., and LPS Default Solutions, Inc. *A true and correct copy of said consent order is attached hereto as "Exhibit F."*

42. The Consent Order describes the following actions by defendants, among others:

> (b)    Executed assignments of mortgages containing inaccurate information pertaining to matters including the identity and location of the assignee and beneficiary and the effective date of the assignment. LPS recorded or caused to be recorded these

assignments of mortgages in local land record offices, or executed them on behalf of Examined Servicers knowing they would be filed in state courts or in connection with bankruptcy proceedings in federal courts;

(c)     Executed Affidavits, assignments of mortgages, and other mortgage-related Documents (collectively, "Mortgage Documents") on behalf of Examined Servicers without Authority to execute the Mortgage Documents, specifically without having been duly appointed as an agent or officer of the Examined Servicers to execute documents on behalf of the Examined Servicers;

(d)     Recorded or caused to be recorded in local land records offices numerous Mortgage Documents that were not properly notarized, including those not signed or affirmed in the presence of a notary, or knew that such Mortgage Documents would be filed in state and federal courts;

*See "Exhibit F," Page 4.*

43. As a result of the Consent Order, LPS and DocX agreed to the following conditions, among others:

   a. LPS shall retain an independent consultant, acceptable to the Agencies, to conduct an independent review of the document execution services that LPS provided to Examined Servicers at any time between January 1, 2008 and December 31, 2010;

   b. To determine, at a minimum: (i) whether factual assertions made in Mortgage Documents executed by LPS and its employees on behalf of Examined Servicers were correct, including assertions pertaining to (1) personal knowledge, review of the relevant books and records, or other similar due diligence, (2) ownership of the mortgage note and mortgage (or deed of trust), (3) the length of time that the mortgage note was in default, (4) the fees and expenses chargeable to the borrower, (5) the identity and location of the assignee and beneficiary, and (6) the effective date of the assignment;

   c. Determine whether LPS and its employees had authority to execute Mortgage Documents on behalf of the Examined Servicers or the relevant investor on whose behalf it executed Mortgage Documents;

   d. Determine whether the practices of LPS and its employees in notarizing Mortgage Documents were consistent with the notarization or attestation clause;

   e. Examine measures to reimburse the...borrower, as appropriate, for

financial injury from the document execution services provided by LPS;

See "Exhibit F," Pages 9-12.

44. However, Defendants failed to take any action in direct violation of the Consent Order. Specifically, to date, the fraudulent assignments are still on the land records in the County of Nassau and to date were used and relied upon three times for foreclosure purposes.

45. DocX was subsequently indicted and its CEO, Lorraine Brown[4], pleaded guilty on November 20, 2012, in federal court in Jacksonville, Florida to conspiracy to commit mail and wire fraud. According to the judgment with the criminal division of the Department of Justice:

> Beginning in or about 2003, certain employees at DocX (the "Authorized Signers"), at the direction of Brown and others, began falsifying signatures on the mortgage- related documents that DocX had been hired to prepare and file with property recorders' offices throughout the United States. Through this scheme, and unbeknownst to the clients, the Authorized Signers were instructed by Brown and other senior managers to allow unauthorized personnel to sign documents, and to have these documents notarized as if Authorized Signers had executed them. These signing practices were used at the DocX business from at least March 2003 until late 2009, and were implemented to enable LPS, DocX and Brown to make more money. To further increase profits, Brown hired temporary workers to sign as Authorized Signers. These temporary employees would sign mortgage-related documents at a much lower cost and without the quality controls represented to clients. Temporary workers were able to sign thousands of documents every day. These mortgage-related documents were then falsely notarized by employees at DocX who attested that Authorized Signers signed the documents, even though Authorized Signers had not in fact done so. This allowed the fraud scheme against the servicers to remain undetected.
>
> After these documents were falsely signed and fraudulently notarized, Brown authorized DocX employees to file and record them with local county property records offices across the country. Many of these documents were later relied upon in court proceedings, including property foreclosures and federal bankruptcy actions. Brown

---

[4] https://www.justice.gov/opa/pr/former-executive-florida-based-lender-processing-services-inc-sentenced-five-years-prison

admitted she understood that property recorders, courts, title insurers and homeowners relied upon the documents as genuine."

*See "Exhibit G," Appendix "A", ¶¶ 7, 8*

46. In spite of the above-referenced Consent orders and Judgments, on April 19, 2012, a new set of documents related to Plaintiffs property appeared in a court proceeding.

47. Upon information and belief, Defendants, working in concert, utilized The "Wells Fargo Home Mortgage Foreclosure Attorney Procedure Manual" (hereinafter referred to as "the manual"), annexed hereto as *Exhibit "H,[5]"* to falsely create (strictly for the purposes of litigation) the requisite documents necessary to foreclose on Levins' property.

48. The first version of the manual was generated on or about November 9, 2011 and the third revision was published on February 24, 2012.

49. Specifically, Defendants used the portion of the manual entitled "Missing Note Process NOTE NOT RECEIVED" section (*Id*, page 15) to request the note. The instructions in the manual to the attorneys were as follows:

> *"Attorney: If after the third business day of the referral date you have not received the note, add log code NOTRRP in VendorScape or add the Note Not Received in Referral Package Issue in Desktop. This can be done by selecting Issues from the Tool Menu and selecting Add Issue."*

50. Upon information and belief, Defendants recognized that the note had no connection to Wells Fargo and therefore moved to the section of the manual (specifically Page

---

[5] Only pertinent pages are annexed at this time.

17), regarding "note endorsements," with the following instructions:

> "*Attorney: Enter step Z02 (Endorsed Note Needed) to the FOR3 screen (if a loan is in foreclosure) or the BNK3 screen (if a loan is in Bankruptcy)." Subsequently the instructions of the manual to the WFHM Default Docs Team: Research needed endorsement. If the blank endorsement is in the file for an original state, <u>execute the endorsement</u>, send the original document to the attorney, and complete the Z02 step. <u>If needed endorsement is located for a copy state</u>, execute the endorsement, send the original document to imaging, and complete the Z02 step."*

51. This coded message activated the "endorsement team," required the foreclosing attorney to prepare the endorsement and submit to the "endorsement team."

52. The note received here is neither endorsed in blank nor is it endorsed specifically to Wells Fargo.  On the contrary, the note was endorsed to Option One Mortgage Corporation, a California Corporation. The note was stamped original and it appears to have four rubber stamps as follows:

> A.  1st rubber stamp on its own line stating,
>
> "Option One Mortgage Corporation, A California Corporation"
>
> B.  2nd undated rubber stamp embedded with a signature stating, "*PAY TO THE ORDER OF_____WITHOUT RECOURSE,"* hand signature of Evelyn Ortiz followed by Superior Home Mortgage.

C.  3rd rubber stamp stating,

Evelyn Ortiz "Post-Closing Supervisor", assuming that Evelyn Ortiz was the Post Closing Supervisor to Superior Home Mortgage.

*See Exhibit "I."*

53. On September 14, 2016, Evelyn J. Ortiz was served with a third-party complaint under Docket # 2:15-cv-02773.

54. On January 5, 2017, Evelyn J. Ortiz appeared by an affidavit stating among other things that she: "does not recognize the signature" and "denies involvement in creating or signing this note." *A true and correct copy of said Affidavit is attached hereto as "Exhibit J."*

55. On February 22, 2017, Evelyn Ortiz amended her affidavit stating that "Additionally, I did not authorize anyone to use my NAME on this mortgage note or any mortgage document." *A true and correct copy of said Affidavit is attached hereto as "Exhibit K."*

56. Upon information and belief, said endorsement was produced by Defendants in violation of the consent orders they entered into with federal and state authorities.

57. To support its position in foreclosure proceedings, Wells Fargo produced an Affidavit of David J. Merrill.

58. The affidavit of David Merrill, which is dated April 13, 2012, allegedly was signed in his capacity as "Assistant Secretary" for American Home Mortgage Servicing, Inc.

59. The servicer further stated that Wells Fargo "is the current holder of the note relating to the mortgage on 960 Cliffside Avenue, Valley Stream, New York, and attached is a

true and correct copy of said note, together with endorsement and an allonge [6], endorsed in blank."

60. It is undisputed that on April 13, 2012, David J. Merrill appeared in front of a notary public, in <u>Duval</u> County, Florida, and signed under oath an affidavit stating that "I am an Assistant Secretary for American Home Mortgage Servicing, Inc. ("AHMSI"), servicer for Wells Fargo Bank, N.A., as Trustee for Option One Loan Trust." And "I am familiar with the records of American Home Mortgage Servicing, Inc., as well as those of Wells Fargo."

61. David John Merrill was at all times a resident of Orange County in Tustin, California.

62. It is highly doubtful that David John Merrill flew to Duval County, Florida to sign the affidavit. However, coincidently enough, LPS was located at all times in Duval County, Florida.

63. David J. Merrill is located in Orange County, California, while the notary was located in Duval County – the same venue as LPS's headquarters.

64. Additionally, David J. Merrill stated that "Attached as Exhibit "1" is a true and correct copy of said note, together with endorsement and an allonge [7]," endorsed in blank, making reference to a single allonge- page 8 of 26 and dated October 15, 2006.

65. In Defendants' scheme to create fraudulent documents, the allonge is unidentified. "*A true and correct copy of said Affidavit is attached hereto as "Exhibit L" and the allonge as "Exhibit L-1."*

---

[6] A single allonge

[7] A single check in blank

66. David John Merrill claimed to have been the custodian of documents for American Home Mortgage Servicing Inc. and Wells Fargo. David J. Merrill further states that "Said records were made in the regular course of business and it was the regular course of Wells Fargo and......to make said records, at the time of the act, transaction, or event, or within a reasonable time thereafter." In view of the fact that the Note endorsement was not signed by Evelyn Ortiz said statement was false. Additionally David J. Merrill failed to notice the 2nd allonge-page 8 of 26, and dated October 31, 2006, only two weeks after the first unidentified allonge. The second allonge appeared in July 2014 and was purportedly signed by Penny Garcia. *A true and correct copy of said Allonge is attached hereto as "Exhibit M."*

67. Levins identified Penny Garcia as Penelope Garcia of Hialeah, Florida. Upon service of a summons and complaint, Penelope Garcia's attorney appeared and stated that Penelope Garcia in fact worked for Wells Fargo, however "It is most certainly not her, nor is it her signature on the allonge. I have been working to locate the true "Penny Garcia" in an effort to help you. I have been unsuccessful as of yet but will continue trying." *A true and correct copy of said letter and email is attached hereto as "Exhibit N."*

68. As a supplement to the affidavit of David John Merrill, Wells Fargo filed the certification of John J. Gable, at that time in his capacity as attorney for Wells Fargo. Mr. Gable stated in his certification that "On the 17th day of April, 2012, I certify that the attached note, together with endorsement and an allonge, endorsed in blank, is a

true, exact, complete and unaltered photocopy." *A true and correct copy of said Certification is attached hereto as "Exhibit O."*

69. Mr. Gable's certification was defective since it was not made under penalty of perjury. This self created certification by John Gable was on behalf of his own client, Wells Fargo and refers to the same forged note endorsement purportedly signed by Evelyn Ortiz. *See* Supra ¶ 52.

70. Additionally, Mr. Gable failed to identify how and when he obtained the knowledge as to the documents and on whose behalf he was certifying for.

71. The affidavit of David J. Merrill and the certification of John J. Gable refer to a <u>single</u> allonge. *See Exhibit L" and Exhibit "O."*

72. Levins conclude that all these documents were prepared by Defendants in violation of the consent order and judgments they entered with the government and other States and solely for the purpose of supporting an unlawful foreclosure on Levins' property.

73. On or about January 30, 2013, Defendants entered into a Consent Final Judgment with the State of New Jersey. *A true and correct copy of said Consent Judgment is attached hereto as "Exhibit P."*

74. On January 31, 2013, Defendants entered into a Consent Final Judgment with the State of Florida Attorney General's Office. *A true and correct copy of said Consent Judgment is attached hereto as "Exhibit Q."*

75. The consent judgments generally required Defendants to <u>cease and desist</u> from creating falsified documents.

76. Defendants' intentional and willful creation of falsified documents was not only in direct violation of the above-referenced consent judgments, but also constitutes a violation of CPLR §2106 (which was provided by attorneys for Wells Fargo).

77. CPLR §2106, pursuant to Administrative Order 431/11 entered on March 2, 2011, requires an affirmation to be filed under this section in any residential mortgage foreclosure action. In enacting this rule, Chief Judge Lippman said, "*We cannot allow the courts in New York State to stand by idly and be party to what we now know is a deeply flawed process, especially when that process involves basic human needs — such as a family home — during this period of economic crisis.*"

78. Notes supplemental to CPLR §2106 state that: "*During and after August 2010, numerous and widespread insufficiencies in foreclosure filings in various courts around the nation were reported by major mortgage lenders and other authorities. These insufficiencies include: failure of plaintiffs and their counsel to review documents and files to establish standing and other foreclosure requisites; filing of notarized affidavits which falsely attest to such review and to other critical facts in the foreclosure process; and "robosignature" of documents by parties and counsel. The wrongful filing and prosecution of foreclosure proceedings which are discovered to suffer from these defects may be cause for disciplinary and other sanctions upon participating counsel.*"

79. CPLR §2106 states in relevant part, "The statement of an attorney admitted to practice in the courts of the state...authorized by law to practice in the state, who is not a party to an action, when subscribed and affirmed by him to be true under the penalties of

perjury, may be served or filed in the action in lieu of and with the same force and effect as an affidavit."

80. Plaintiff's affirmation pursuant to §2106 was signed on March 30, 2015 by Attorney Matthew N. Maltese of the law firm of RAS BORISKIN, LLC, who at that time represented Wells Fargo. *A true and correct copy of said Affirmation (and documents) is attached hereto as "Exhibit R."*

81. Attorney Maltese purports to attach the following falsified documents in support of his §2106 affirmation: (a-f below are hereinafter collectively referred to as the "fraudulent documents").

    a. **Assignment of Mortgage, allegedly signed by Karell Harp and Tywana Thomas.** The Assignment was signed by Karell Harp, in his alleged capacity as Vice President of American Home Mortgage Servicing, Inc., and Tywana Thomas, in her alleged capacity as Asst. Vice President of American Home Mortgage Servicing Inc. Karell Harp and Tywana Thomas never worked for American Home Mortgage Servicing, Inc., but upon information and belief, they did work for DocX, a known robo-signing entity. This Assignment of Mortgage was made while Harp and Thomas were employees of DocX. Upon information and belief, Tywana Thomas does not exist. Thus, the authority of Karell Harp and Tywana Thomas to sign said assignment is questionable and the authenticity of Karell Harp's and Tywana Thomas's signatures are questionable.

Additionally, Plaintiff already declared this assignment as ineffective. *See* supra ¶¶ 26-29.

b. **Assignment of Mortgage, allegedly signed by Brian Voglesong.** Said Assignment of Mortgage is dated February 26, 2008 and was allegedly executed by Brian Voglesong, Sr. Vice President for Superior Home Mortgage. Said Assignment of Mortgage was prepared by and sent to the County Clerk for recording by American Document Service LLC. Brian Voglesong never executed this Assignment. *See* supra ¶¶ 16-21.

c. **Corrected Assignment of Mortgage, allegedly signed by Roger Kistler.** This corrected assignment supposedly attempts to correct the faulty assignment of the robo-signors as well as the fraudulent assignment of Brian Voglesong, which never took place and therefore this assignment assigns nothing to either Option One Mortgage Corp or Sand Canyon. Furthermore, Roger Kistler, as the alleged vice president of Sand Canyon, executed the corrected Assignment of Mortgage. Upon information and belief, Roger Kistler was at all times an employee of American Home Mortgage Servicing, Inc., the servicer of Plaintiff and never an employee of Option One Mortgage or Sand Canyon Corporation. Roger Kistler worked for American Home Mortgage Servicing, Inc., as evidenced by American Home Mortgage Servicing, Inc.'s Secretary Certificate of July 2, 2009, in which Roger Kistler was appointed Vice President. Thus, it appears that upon information and belief, Roger Kistler appears on demand and wears

different hats to fit various litigated matters. The authority of Roger Kistler to sign said assignment and the authenticity of Roger Kistler's signature is questionable. *See* supra ¶¶ 33-37.

    d. **Adjustable Rate Note, allegedly stamped by Evelyn Ortiz.** *See* supra ¶¶ 52-55.

    e. **Allonge to Note, dated October 16, 2006.** The signor of the allonge is unidentified. The date of the allonge is October 16, 2006. The allonge is on page 8 of 26 and therefore was not affixed to the note as required. *See* supra ¶ 64.

    f. **Allonge to Note, dated October 31, 2006.** This 2nd allonge was signed by Penny Garcia and dated October 31, 2006, in her alleged capacity as Assistant Secretary to Option One Mortgage Corporation, a California Corporation. *See* supra ¶¶ 66-67.

82. Wells Fargo has provided a Certificate of Merit signed by attorney Matthew Maltese in its active foreclosure case against Levins.

83. Wells Fargo's affirmation and documents prevented attorney Matthew Maltese from providing an affirmation confirming to CPLR §2106. Wells Fargo's affirmation and documents described thereto pursuant to CPLR §2106 are fraudulent fatally defective and could not be corrected.

84. Astonishingly, on or about September 30, 2015, Counsel for Wells Fargo, Mitra Paul Singh of the law firm of McGlinchey Stafford, had prepared and filed an "Amended Certificate of Merit" within the underlying federal foreclosure action against Levins'

property. Said document exhibited the same exact fraudulent documents. *A true and correct copy of said Amended Certificate of Merit is attached hereto as "Exhibit S"*

85. The filing of the fraudulent documents clearly fall within the note of Chief Judge Lippman *"The wrongful filing and prosecution of foreclosure proceedings which are discovered to suffer from these defects may be cause for disciplinary and other sanctions upon participating counsel."*

86. Defendants have a clear and unequivocal demonstrated history of purposely, knowingly and willingly engaging in a calculated scheme of creating the fraudulent documents solely for the purpose of advancing unlawful and illegal foreclosure actions, and as a result Levins have been financially and emotionally damaged.

## COUNT I: DECLARATORY RELIEF DECLARING THE FRAUDULENT DOCUMENTS NULL AND VOID AS A MATTER OF LAW

87. Levins incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

88. Defendants knowingly and willingly improperly executed, notarized, and recorded the fraudulent documents, upon which Wells Fargo has relied in the course of pursuing foreclosure proceedings.

89. The referenced fraudulent documents should be deemed invalid and void as a matter of law for the reasons stated herein.

90. Foreclosure proceedings have commenced against Levins based on the fraudulent documents.

91. New York state courts have found that no justiciable controversy exists for claims seeking a declaratory judgment of rights under or ownership of a mortgage if no foreclosure proceedings have been commenced. See *Fairhaven Properties, Inc. vs. Garden City Plaza, Inc.*, 119 A.D.2d 796, 501 N.Y.S.2d 422, 423 (2d Dept.1986) ("claim for a declaratory judgment...on a real estate property are premature if no foreclosure proceedings have been commenced").

92. As a direct result of Defendants' willful conduct, Levins have been emotionally damaged.

93. As a direct result of Defendants' willful conduct, Levins have been financially damaged.

   **WHEREFORE**, Levins respectfully request this Honorable Court enter an order:

   1. Declaring that the fraudulent documents are null and void as a matter of law;

   2. Declaring that any subsequent fraudulent documents be deemed null and void as a result of the broken chain of title;

   3. Awarding Levins damages in an amount of $1,000,000; and

   4. Awarding Levins any such further relief deemed just and proper.

   ## COUNT II: FRAUDULENT MISREPRESENTATION

94. Levins incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

95. Defendants knowingly and willingly improperly executed, notarized, and in some cases recorded the fraudulent documents, upon which Wells Fargo has relied in the course of pursuing foreclosure proceedings.

96. Defendants took part in their willful conduct knowing that the fraudulent documents would be used by servicers in order to pursue foreclosure proceedings against homeowners such as Levins.

97. Defendants represented to the servicers and to Levins that a legal and valid transfer of the mortgage interest had taken place.

98. Defendants made this representation knowing it was false.

99. Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

100. To comply with Rule 9(b), a complaint alleging fraudulent misrepresentation under New York law must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner vs. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir.2006) (quoting *Mills vs. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993)).

101. Here, the fraudulent documents contain materially significant fraudulent statements and representations.

102. Defendants worked in concert to create, execute, improperly notarize and in some cases, have recorded the fraudulent documents.

103.  As a direct result of Defendants' willful conduct, Levins have been emotionally damaged.

104.  As a direct result of Defendants' willful conduct, Levins have been financially damaged.

WHEREFORE, Levins respectfully request this Honorable Court enter an order:

1. Declaring that the fraudulent documents are null and void as a matter of law;

2. Declaring that any subsequent fraudulent documents be deemed null and void as a result of the broken chain of title;

3. Awarding Levins damages in an amount of $1,000,000; and

4. Awarding Levins any such further relief deemed just and proper.

## COUNT III: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

105.  Levins incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

106.  In New York, to state a claim for intentional infliction of emotional distress, a plaintiff must allege: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender vs. City of N.Y.*, 78 F.3d 787, 790 (2d Cir.1996).

107.  Defendants have engaged in extreme and outrageous conduct.

108. Defendants knowingly and willingly improperly executed, notarized, and in some cases, recorded the fraudulent documents, upon which Wells Fargo has relied in the course of pursuing foreclosure proceedings.

109. Defendants engaged in this willful conduct knowing that the fraudulent documents would be used by Wells Fargo to create the impression of legal standing to foreclose on Levins' home.

110. Defendants' conduct was extreme and outrageous as it led to the improper filing of two foreclosure actions against the subject property. Said foreclosure actions have put Levins in fear of losing their home.

111. Defendants' willful conduct goes beyond all possible bounds of decency.

112. As a direct result of Defendants' willful conduct, Levins have been emotionally damaged.

113. As a direct result of Defendants' willful conduct, Levins have been financially damaged.

WHEREFORE, Levins respectfully request this Honorable Court enter an order:

1. Declaring that the fraudulent documents are null and void as a matter of law;

2. Declaring that any subsequent fraudulent documents be deemed null and void as a result of the broken chain of title;

3. Awarding Levins damages in an amount of $1,000,000; and

4. Awarding Levins any such further relief deemed just and proper.

### COUNT IV- VIOLATION OF 18 U.S.C. §1341

114.  Levins incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

115.  In furtherance of their scheme to defraud, Defendants utilized the United States Postal Service for mailing and delivery of the fraudulent documents.

116.  The fraudulent documents were mailed and delivered to all 'interested' parties, including the Court, Clerk of Courts and Levins.

117.  Defendants utilized the United States Postal Service to provide copies of the fraudulent documents to all 'interested parties.'

118.  Defendants utilized the United States Postal Service in furtherance of their scheme to defraud and to ultimately deprive Levins of their money and property.

119.  Defendants' use of the mail in furtherance of their scheme to deprive Levins of their money and property constitutes a violation of 18 U.S.C.§1341, which states in relevant part: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises… for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to

be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title…"

120.    Levins have demonstrated that Defendants engaged in a scheme to defraud.

121.    Levins have demonstrated that Defendants intentionally and knowingly engaged in the scheme to defraud.

122.    In furtherance of the scheme to defraud, interstate mails were utilized on several occasions.

123.    "A complaint alleging mail fraud must show (1) the existence of a scheme to defraud, (2) the defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." *S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir.1996).

124.    As a direct result of Defendants' willful conduct, Levins have been emotionally damaged.

125.    As a direct result of Defendants' willful conduct, Levins have been financially damaged.

**WHEREFORE**, Levins respectfully request this Honorable Court enter an order:

1. Declaring that the fraudulent documents are null and void as a matter of law;

2. Declaring that any subsequent fraudulent documents be deemed null and void as a result of the broken chain of title;

3. Awarding Levins damages in an amount of $1,000,000 for their willful violation of 18 U.S.C. §1341; and

4. Awarding Levins any such further relief deemed just and proper.

## COUNT V: VIOLATION OF 18 U.S.C. §1957

126. Levins incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

127. 18 U.S.C. §1957(a) provides in relevant part: "Whoever…knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished…"

128. Defendants' fraudulent conduct constitutes unlawful activity.

129. Defendants intentionally engaged in said unlawful activity solely for the purpose of depriving Levins of their money and property.

130. It is undisputed that Levins' property has a value greater than $10,000.00.

131. As a direct result of Defendants' willful conduct, Levins have been emotionally damaged.

132. As a direct result of Defendants' willful conduct, Levins have been financially damaged.

WHEREFORE, Levins respectfully request this Honorable Court enter an order:

1. Declaring that the fraudulent documents are null and void as a matter of law;

2. Declaring that any subsequent fraudulent documents be deemed null and void as a result of the broken chain of title;

3. Awarding Levins damages in an amount of $1,000,000 for their willful violation of 18 U.S.C. §1957; and

4. Awarding Levins any such further relief deemed just and proper.

## TOLLING STATUTE OF LIMITATIONS

133. Levins incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

134. The discovery rule applies to this case and the statute of limitations has been tolled until the day that Levins knew or had reason to know that the documents in question were in fact improperly prepared, executed, notarized and recorded by Defendants.

135. Furthermore, the running of any statute of limitations has been equitably tolled by reason of Defendants' fraudulent conduct.

136. Through their affirmative misrepresentations, Defendants actively represented that Wells Fargo had/has a secured interest in the subject property.

137. Defendants are estopped from relying on any statute of limitations because of their intentional concealment of the truth and validity of the fraudulent documents.

## DEMAND FOR NON-JURY TRIAL

Levins hereby demand a Non-Jury Trial on all triable issues.

Dated: March 3, 2017.

Respectfully submitted,

_____
ISAAC LEVIN
Plaintiff
960 Cliffside Avenue
N. Woodmere, NY 11581
isaaclevin2010@gmail.com
1.516.374.0188

_____
OFRA LEVIN
Plaintiff
960 Cliffside Avenue
N. Woodmere, NY 11581
ofrarlevin@gmail.com
1.516.792.5858