UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
ISAAC LEVIN and OFRA LEVIN,

                                    **REPORT AND RECOMMENDATION**
                         Plaintiffs,         CV 17–1285 (JMA)(AYS)

        -against-

AMERICAN DOCUMENT SERVICES, LLC,
TODD C. JOHNSON, JOYCE BREUNINGER,
LENDER PROCESSING SERVICES, INC.,
DOCX, LLC, BLACK KNIGHT FINANCIAL
SERVICES, and WELLS FARGO BANK, N.A.,
as TRUSTEE FOR OPTION ONE MORTGAGE
LOAN TRUST 2007-1, ASSET-BACKED
CERTIFICATES, SERIES 2007-1,

                        Defendants.
----------------------------------------------------X
**SHIELDS, Magistrate Judge,**

Pro se plaintiffs Isaac Levin and Ofra Levin (the "Levins" or "Plaintiffs") commenced this action against defendants American Document Services, LLC ("ADS"). Black Knight Financial Services ("Black Knight Financial"), DocX, LLC ("DocX"), Black Knight InfoServ, LLC f/k/a/ Lender Processing Services, Inc. ("LPS"), Wells Fargo Bank, National Association, as Trustee for Option One Mortgage Loan Trust 2007-1, Asset-Backed Certificates, Series 2007-1 ("Wells Fargo"), and individuals Todd C. Johnson ("Johnson") and Joyce Breuninger ("Brueninger") (the "Individual Defendants") (collectively "Defendants"), essentially asserting claims for damages based upon a pending foreclosure action in New York State Court. Specifically, inter alia, Plaintiffs challenge the assignments of the Mortgage at issue claiming that Defendants engaged in robo-signing of two assignments of mortgage, and effected a late transfer of the mortgage to a securitized trust allegedly in violation of its pooling and servicing agreement. Plaintiffs'

1

Amended Complaint ("Am. Compl.") also contains claims for fraudulent misrepresentation and intentional infliction of emotional distress.

Presently before this Court, upon referral by the Honorable Joseph F. Bianco for Report and Recommendation[1], see Docket Entry ("DE") [92], are Defendants' motions to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, see DE [149],[153], and Plaintiffs' opposition to the motions and cross-motion for summary judgment. See DE [167]. This Court respectfully recommends that the motions to dismiss be granted in their entirety with prejudice and that Plaintiffs' motion for declaratory judgment be denied as moot.

## BACKGROUND

I.    Documents Considered

As is required in the context of this motion to dismiss, the factual allegations in the Complaint, though disputed by Defendants, are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of the Plaintiffs.

While facts to consider in the context of a Rule 12 motion to dismiss are generally limited to those set forth in the pleadings, a court may consider matters outside of the pleadings under certain circumstances. Specifically, in the context of a Rule 12(b)(6) motion, a court may consider: (1) documents attached to the Complaint as exhibits or incorporated by reference therein; (2) matters of which judicial notice may be taken; or (3) documents upon the terms and effects of which the Complaint "relies heavily" and which are, thus, rendered "integral" to the Complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 152-153 (2d Cir. 2002); see Int'l

---

1. Subsequent to the referral order, this case was reassigned to the Honorable Joan M. Azrack for all further proceedings. See Entry dated 5/31/2019.

Audiotext Network, Inc. v. Am. Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995). Moreover. "[a] court may take judicial notice of a documents filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (quoting Int'l Star Class Yacht Racing Ass'n Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998)).

Where, as here, the complaint was filed pro se, it must be construed liberally with "special solicitude" and interpreted to raise the strongest claims that it suggests. Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks omitted). Nonetheless, a pro se complaint must state a plausible claim for relief. See Harris v. Mills, 572 F.3d 66, 73 (2d Cir. 2009).

The Court turns now to discuss the facts set forth in Plaintiffs' Amended Complaint, construed in their favor.

II.   Facts

    A.   Background

        1.   The Mortgage Assignment

Plaintiffs are husband and wife and have resided at 960 Cliffside Avenue, Valley Stream, New York 11581 (the "Premises") since 1983. Am. Compl. ¶ 6, DE [70]. In 2006, Ofra Levin executed a note (the "Note") secured by a mortgage (the "Mortgage") encumbering the Premises in favor of Superior Mortgage Corporation. Am. Compl. ¶ 14.[2] On July 7, 2008, an assignment of mortgage was recorded with the Nassau County Clerk purporting to transfer the Mortgage

---

2. This Court notes that Isaac Levin is not a party to the Note or Mortgage, nor is he listed as an owner on the recorded deed. Biffar Decl. ¶ 3, DE [155].

3

from Superior Home Mortgage Corp. to Option One Mortgage Corporation. Am. Compl. ¶ 17. Plaintiffs allege that the assignment was "prepared by and sent to the County Clerk for recording" by ADS. Am. Compl. ¶¶ 19-20. Plaintiffs further allege that employees of "ADS and/or DocX and or [Lender Processing Services (now BlackKnight InfoServ)]" were utilized in creating and filing the assignment in accordance with instructions of Wells Fargo. Am. Compl. ¶¶ 23, 37. Plaintiffs do not allege that ADS executed the assignment.

On April 30, 2009, a second assignment of mortgage was recorded with the Nassau County Clerk, purporting to transfer the Mortgage from American Home Mortgage Servicing, Inc. as successor in interest to Option One Mortgage Corporation to Wells Fargo. Am. Compl. ¶ 31. Plaintiffs allege that employees of DocX participated in the execution of the second assignment. Am. Compl. ¶¶ 35-37.

### 2. The Default and Foreclosure Proceedings

On November 1, 2008, Ofra Levin defaulted on her payment obligations under the Note and Mortgage after failing to make the monthly payment due that day, as well as subsequent payments thereafter. Biffar Decl. Ex. B. ¶¶ 14-15, DE [155-2]. On March 30, 2015, Wells Fargo commenced an action in the Supreme Court of New York, Nassau County to foreclose on the Mortgage. Biffar Decl., ¶ 4, DE [155]; Biffar Decl. Ex. B.

On May 13, 2015, Ofra Levin filed a notice to remove the foreclosure action from the New York State Court to the U.S. District Court for the Eastern District of New York under case number 15-CV-2773-LDW-AYS. Biffar Decl. ¶ 5. On December 2, 2016, the District Court concluded that it lacked subject matter jurisdiction and remanded the case back to the Supreme Court of New York. Id. ¶ 6. On December 12, 2016, Plaintiffs filed a motion for reconsideration of the remand order. Id. ¶ 7. On December 19, 2016, the District Court denied the motion to

4

reconsider and on January 3, 2017, Plaintiffs appealed the remand order and the denial of the motion to reconsider. Id. ¶ 8. On March 7, 2017, the Second Circuit dismissed the appeal after concluding that a remand order based on lack of subject matter jurisdiction was not reviewable on appeal. Id. ¶ 9. On March 20, 2017, Plaintiffs filed a motion with the Second Circuit requesting additional time to petition for reconsideration. Id. ¶ 10. On March 27, 2017, Plaintiffs' motion for additional time to petition for reconsideration was granted and the deadline was extended to April 26, 2017. Id. ¶ 11. On April 23, 2017, Plaintiffs filed a notice of withdrawal of the petition for reconsideration. Id. ¶ 12.

After the foreclosure action was remanded to state court, Ofra Levin filed an amended answer and affirmative defenses with counterclaims in the state court action on February 5, 2017. Biffar Decl. ¶ 13. Isaac Levin was granted leave to intervene in the state court action and subsequently filed an amended answer with affirmative defenses and counterclaims on March 28, 2017. Id. ¶ 14. To date, the state court foreclosure action is still underway.

### 3. Allegations Against Wells Fargo

On March 6, 2017. Plaintiffs commenced the instant action alleging inter alia, that Wells Fargo does not have standing to initiate the state court foreclosure action because it "unjustifiably relied" on the written assignments of mortgage, which Plaintiffs allege are fraudulent and thus deficient assignments of mortgage. See Am. Compl.  Plaintiffs specifically asserted claims for declaratory relief, fraudulent misrepresentation, and intentional infliction of emotional distress. DE [1].

On July 6, 2017, following the filing of motions to dismiss, Plaintiffs filed an Amended Complaint asserting the same claims with additional factual allegations. Plaintiffs new assertions alleged that they suffered financial injury because they "accumulated various legal bills from the

5

attorneys representing them and other court expenses in defenses of the litigated actions, as at least three Notices of Pendency have been filed by Wells Fargo clouding the title and asserting an interest" in the mortgaged property. Am. Compl. ¶ 34. Plaintiffs also claim that Wells Fargo "instructed" ADS and LPS to forge the mortgage assignment and file it with the Office of the Nassau County Clerk. Id. ¶ 23. Plaintiffs further allege that the "Defendants" conduct constitutes criminal conduct under the New York Penal Code Section 170.10(1)-(2). Am. Compl. ¶ 24. New York Penal Code Section 170.10 provides that:

> A person is guilty of forgery in the second degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument which is or purports to be, or which is calculated to become or to represent if completed:
>
> > (1) A deed, will, codicil, contract, assignment, commercial instrument, credit card, as that term is defined in subdivides ion seven of section 155.0, or other instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status; or
> >
> > (2) A public record, or an instrument filed ir required or authorized by law to be filed in or with a public office or public servant . . . ."

Finally, Plaintiffs claim that "Defendants have worked in concert" to develop a mortgage server system. Am. Compl. ¶ 25. Plaintiffs rely on an excerpt of the deposition of Herman John Kennerty, a former Wells Fargo employee, in an unrelated bankruptcy proceeding for this assertion. Am. Compl. ¶ 25; see Ex. T, DE [70-1].

        4.      <u>Allegations Against ADS, LPS, DocX, and Black Knight Financial</u>

ADS is a California based document preparation company for real estate transactions and recording services. Am. Compl. ¶ . LPS provides mortgage document processing services, settlement services, mortgage performance analytics, and is a mortgage default services provider to lenders and mortgage servicing companies. Am. Compl. ¶ 10. DocX is a subsidiary of LPS

6

and a provider of document processing services for lenders and mortgage servicing companies. Am. Compl. ¶ 11. Finally, Black Knight Financial is a Florida based corporation that provides technology and data services to the mortgage and real estate industries. Am. Compl. ¶ 12.

Plaintiffs allege that ADS and LPS were involved in the deficient assignments of mortgage. Am. Compl. ¶ 106. As stated supra, Plaintiffs allege that ADS, LPS, DocX, and Black Knight Financial worked in "concert" with Wells Fargo to create additional, unspecified false documents that appeared in the foreclosure proceedings beginning in April 19, 2012. Am. Compl. ¶ 90. Plaintiffs also make reference to extraneous consent orders with the federal government and state governments and alleged criminal acts for which there is no private rights of action, as part of the Plaintiffs' claims against ADS, LPS, DocX and Black Knight Financial. Am. Compl. ¶¶ 8-9, 24, 39-61; see also Am. Compl. Exs. F, G, P, Q.

Plaintiffs further allege that LPS must have been involved in the execution of an affidavit signed by David J. Merrill in his capacity as Assistant Secretary for American Home Mortgage Servicing, Inc., because the affidavit was notarized in Duval County, Florida, where LPS is headquartered. Am. Compl. ¶ 80.

Finally, Plaintiffs reference the affidavit of John J. Gable, counsel for Wells Fargo in a prior state court foreclosure action, in which Wells Fargo concedes that the April 30, 2009 assignment contains an error and is flawed.[3] Am. Compl. ¶¶ 49, 86. However, Wells Fargo voluntarily discontinued the foreclosure proceeding commenced based on the April 2009 assignment. Affidavit of John Gable, Am. Compl., Ex. V, ¶¶ 4-6. Wells Fargo replaced the April

---

3. The Gable Affidavit explains that the assignor listed on the April 30, 2009 assignment was not the successor to Option One, but rather the successor to Option One's servicing rights only. Affidavit of John Gable, Am. Compl., Ex. V, DE [70-3]. Wells Fargo has not relied upon the April 20, 2009 assignment as a basis for foreclosing since 2010 after acknowledging that the assignment was invalid. Id. ¶¶ 4-5.

7

30, 2009 assignment with a corrected assignment of mortgage, recorded on December 20, 2010. Am. Compl. ¶¶ 53-56. The December 20, 2010 assignment forms the basis of the current underlying foreclosure proceeding. Plaintiffs do not allege that ADS, LPS, DocX or Black Knight Financial were involved in the execution of the corrected assignment.

B.  Procedural History

Plaintiff commenced this action on March 6, 2017. See Compl., DE [1]. After the District Court waived its pre-motion conference requirement and allowed Defendants to proceed to motion practice, see DE [17], [35], [43], [52], all of the Defendants filed motions to dismiss on June 15, 2017. See DE [60] – [63]. By letter dated June 26, 2017, Plaintiffs requested additional time to oppose the motions, which the Court granted. See DE [68], [69]. Prior to filing any opposition, the Plaintiffs filed an Amended Complaint. See DE [70]. Defendants then sought additional time to respond to the Amended Complaint. See DE [71]. Due to the Defendants' need to tailor their responses to the amended allegations, the District Court granted the extensions of time. See DE [73].

On August 4, 2017, Defendants again filed motions to dismiss. See DE [77], [79], [81], [83]. Plaintiffs requested additional time to oppose the motions, see DE [87], which the District Court granted. See Scheduling Order dated 9/1/2017. [22]. On September 19, 2017, Plaintiffs filed their opposition. See DE [88]. However, the opposition contained a cross-motion for declaratory judgment. Id. Defendants immediately moved for additional time to respond to the cross-motion. See DE [89], [90]. By order dated September 25, 2017, the District Court denied the requests for additional time to respond and granted Plaintiffs through November 2, 2017 to submit their reply in support of their cross-motion. See DE [91]. Plaintiffs subsequently moved for an extension of time to submit their reply in support of their cross-motion, see DE [106],

8

which the District Court granted. See Order dated 10/25/2017. On November 5, 2017, Plaintiffs filed a letter requesting to submit a Rule 56.1 Statement of Facts for their already filed cross-motion. See DE [107]. Defendants promptly filed opposition to the request asserting that Plaintiffs never conferred, nor sought leave from the Court to amend their cross-motion to include a 56.1 Statement, and that doing so at this juncture was not only procedurally defective but also created a "procedural morass" with respect to Plaintiffs' motion, because Defendants had already submitted their opposition to the motion. Response in Opposition dated 11/06/2017, at p. 2, DE [108]. Upon briefing of the motions they were referred to this Court for report and recommendation. See DE [92].

Because of Plaintiffs' late submission, the Defendants were not able to appropriately address Plaintiffs' 56.1 Statement and therefore could not properly defend against the motion. Similarly, Plaintiffs were not given an ample opportunity to respond to such defenses, and in turn, this Court could not fairly analyze the motions on the merits. Out of an abundance of fairness and caution to all of the parties, this Court recommended denying Plaintiffs' motion without prejudice to refiling it in accordance with the Local Civil Rules. This Court further recommended that Individual Defendants Johnson and Breuninger's motions to dismiss, found at docket entries No. 78 and No. 79, be granted with prejudice and without leave to replead as any amendment would be futile. This Court also recommended that Plaintiffs' Title 18 claims be dismissed with prejudice and without leave to replead. Finally, this Court recommended that with the exception of the Individual Defendants' motions to dismiss due to lack of personal jurisdiction, and any claims that are statutorily barred, the motions to dismiss be denied without prejudice to refiling. On March 16, 2018, the District Court adopted the recommendations in full. See DE [131].

On October 29, 2018 the Defendants refiled their motions to dismiss, see DE [149] and [153], and Plaintiffs filed their motion for a declaratory judgment[4]. See DE [167]. Upon briefing the motions were referred to this Court for Report and Recommendation. See DE [179].

C.  Causes of Action

The Amended Complaint alleges that Defendants engaged in robo-signing of the Plaintiffs' assignments of mortgage and a late transfer of their mortgage to a securitized trust. Plaintiffs claim that these actions void the documents and thus the mortgage and seek a declaratory judgment stating such. Plaintiffs specifically seek a declaratory judgment deeming the assignments and transfers invalid and void as a matter of law. Plaintiffs also allege that the Defendants engaged in fraudulent misrepresentation and intentional infliction of emotional distress. See generally Am. Compl.

III.  The Motions to Dismiss and Plaintiffs' Motion for Declaratory Judgment

Defendants move to dismiss all claims.  Defendants first argue that Plaintiffs lack standing to bring claims based on the mortgage assignment. Defendants next assert that Plaintiffs have failed to state a claim because they have not suffered an injury because mortgagers do not suffer any injury as a result of ineffective assignments. Additionally, Wells Fargo argues that the Court should abstain in this action to allow the parallel state foreclosure case to proceed.

Plaintiffs' move for declaratory judgment seeking relief declaring the fraudulent documents null and void as a matter of law and declaring that any subsequent fraudulent documents also be deemed null and void.  See DE [167] at p. 63-64.  Plaintiffs claim that they

---

4. Plaintiffs' motion for a declaratory judgment was erroneously filed twice under docket entries No. [158] and [167]. For clarity on the docket, this Court terminates the motion filed under docket entry No. [158] and will reference the motion filed under docket entry No. [167] for the remainder of this Report and Recommendation.

are entitled to such relief due to the mortgage meltdown, extraneous government actions against other parties involving robo assignment, and the "broken chain of title."

The Court now turns to the merits of the motions.

## DISCUSSION

I.    Legal Principles: Standards Applicable on Motions to Dismiss

A.    Rule 12(b)(1)

"A motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) is the appropriate mechanism for challenging a plaintiff's constitutional standing to bring a particular claim." Ali v. New York City Dep't of Transp., 2014 WL 5822625, at *1 (E.D.N.Y. Nov. 7, 2014) (citing W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100, 104 (2d Cir. 2008)). "The party invoking federal jurisdiction bears the burden of establishing" the court's jurisdiction. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992).

B.    Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (quoting, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Arista Records, LLC v. Doe 3, 604 F.3d 110, 119–20 (2d Cir. 2010). Facial plausibility is established by pleading sufficient factual content to allow a court to reasonably infer the defendant's liability. Twombly, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 555. Nor is a pleading that offers nothing more than "labels and conclusions" or "a formulaic

11

recitation of the elements of a cause of action," sufficient. Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 555).

District courts are "obligated to construe pro se complaint [s] liberally," Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), interpreting them "to raise the strongest arguments that they suggest," Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). Courts may not, however, read into pro se submissions claims inconsistent with the pro se litigant's allegations, Phillips v. Girdich, 408 F.3d 124, 127 (2d Cir. 2005) (citation omitted), or arguments that the submissions themselves do not "suggest," Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006). Pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted).

With these standards in mind, the Court turns to assess the viability of Plaintiff's claims.

II.     Lack of Standing

The Second Circuit addressed the issue of the standing of plaintiff mortgagors where the mortgages had been assigned in Rajamin v. Deutsche Bank National Trust Co., 757 F.3d 79 (2d Cir.2014). In that case, several mortgagors brought claims seeking a declaratory judgment as well as monetary and equitable relief claiming that the assignee trusts did not own the mortgages in question because of their failure to comply with assignment agreements and thus were not entitled payments under the loans. In affirming the district court's decision to grant the defendants' motion to dismiss for lack of standing, the Court first examined whether the plaintiffs had constitutional standing, which requires the plaintiffs to have some "injury in fact." The Court noted that those plaintiffs acknowledged that they took out the loans and were obligated to repay them, with interest; that they did not plead that they ever paid more than was due, nor were they

12

asked to pay more than was due. Thus, their alleged injuries were only hypothetical, and insufficient to support constitutional standing. Id., at 85–86.

Various district court have also examined whether plaintiff mortgagors can be relieved of their obligations under a mortgage note where it was assigned. In Pollak v. Bank of America, 2013 WL 4799264, at *3 (S.D.N.Y. 2013), appeal withdrawn, (Mar. 14, 2014) the court addressed whether the plaintiff could challenge obligations under a note transferred with a blank indorsement. The court dismissed the claim, stating "[i]n any event, the question of who owns plaintiff's Mortgage is irrelevant for purposes of this case, as plaintiff admits he obtained two loans from Countrywide to purchase the Property. Common sense dictates that the mere fact there may be a dispute as to which entity has legal ownership of the Mortgage does not obviate plaintiff's contractual obligation to repay the loans." Id., 2013 WL 4799264, at *3. See also Boco v. Argent Mortg. Co, LLC, 2014 WL 1312101, at *3 (E.D.N.Y. 2014) ("any purported assignment ... has not injured [p]laintiff because the assignment would not affect her obligation to repay her debt or otherwise alter the terms and conditions of the note and mortgage"); Zutel v. Wells Fargo Bank, N.A., 2014 WL 4700022, at *4 (E.D.N.Y. 2014) (plaintiffs have no standing to bring a claim to quiet title due to improper assignment which did not affect the plaintiffs' underlying debt or otherwise altered the terms of their loan); Barnett v. Countrywide Bank, FSB, 60 F. Supp. 3d 379, 389 (E.D.N.Y. 2014) (plaintiffs do not have standing to quiet title based on failure to comply with assignment agreements).

Based on the Second Circuit's decision in Rajamin, this Court too finds that the Plaintiffs lack the requisite standing, both constitutional and prudential, to challenge the assignment and transfers of the loan.

13

First, they lack constitutional standing because they fail to allege a sufficient injury in fact. The Plaintiffs "acknowledge that they took out [the original loan] and were obligated to repay [it]," Rajamin, 757 F.3d at 85, and the subsequent assignment did not affect the Plaintiffs' underlying debt or otherwise alter the terms of their loan. See Boco v. Argent Mortgage Co., LLC, 2014 WL 1312101, at *3 (E.D.N.Y. Mar. 31, 2014); Tamir v. Bank of New York Mellon, 2013 WL 4522926, at *3 (E.D.N.Y. Aug. 27, 2013). Indeed, the assignment of the mortgage to the securitized trust did not create a new encumbrance on the subject property.

The Plaintiffs also do not allege that they paid the Defendants more than the amounts due; that the Defendants (or any other lenders or loan servicers) dispute who owns the loan; or that any entity other than the Defendants has attempted to recover on the loan. Rajamin, 757 F.3d at 85; Boco, 2014 WL 1312101, at *3; Tamir, 2013 WL 4522926, at *3. In fact, the Plaintiffs' "impl[ication] that the loans are owned by some other entity or entities[ ] is highly implausible, for that would mean that [for the last few years,] there was no billing or other collection effort by the loan's true owner." Rajamin, 757 F.3d at 85; see also Tamir, 2013 WL 4522926, at *3 (dismissing the mortgagor's quiet title claim for failure to plead concrete and particularized injury); see also Zutel v. Wells Fargo Bank, N.A., 2014 WL 4700022, at *4 (E.D.N.Y. Sept. 22, 2014) (relying on Rajamin).

Second, the Plaintiffs fail to satisfy the prudential elements of standing. "The 'prudential standing rule ... normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves.'" Rajamin, 757 F.3d at 86 (quoting Warth v. Seldin, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L.Ed.2d 343 (1975)). The "Plaintiffs lack prudential standing here because they are not parties to, nor third[-]party beneficiaries of, the Assignment or the PSA." Zutel, 2014 WL 4700022, at *5; Rajamin, 757

F.3d at 86 (affirming dismissal for lack of prudential standing); Boco, 2014 WL 1312101, at *3 (dismissing for lack of standing because the plaintiff was not party to, or third-party beneficiary of, assignment and the PSA); Tamir, 2013 WL 4522926, at *3 ("Plaintiff is not a party to the mortgage assignment, nor is there language in the governing loan documents or other allegations suggesting that Plaintiff is a third-party beneficiary of that agreement."), appeal withdrawn (Jan. 13, 2014); Pollak v. Bank of Am., 2013 WL 4799264, at *3 (S.D.N.Y. Aug. 27, 2013) ("the question of who owns plaintiff's Mortgage is irrelevant for purposes of this case, as plaintiff admits he obtained two loans from Countrywide to purchase the Property. Common sense dictates that the mere fact there may be a dispute as to which entity has legal ownership of the Mortgage does not obviate plaintiff's contractual obligation to repay the loans."), appeal withdrawn (Mar. 14, 2014); Karamath v. U.S. Bank, N.A., 2012 WL 4327613, at *7 (E.D.N.Y. Aug. 29, 2012) ("[P]laintiff is not a party to the PSA or to the Assignment of Mortgage, and is not a third-party beneficiary of either, and therefore has no standing to challenge the validity of that agreement or the assignment."), report and recommendation adopted, 2012 WL 4327502 (E.D.N.Y. Sept. 20, 2012). This Court too finds that Plaintiffs do not have standing to seek a declaration that their obligations are null and void as the result of an improper assignment of the mortgage. Therefore, it is recommended that Defendants' motions to dismiss the declaratory judgment claims be granted.

III.    Failure to State a Claim

    A.    Fraudulent Misrepresentation Claim

Federal Rule of Civil Procedure 9(b) requires that a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). If there are multiple defendants potentially implicated in the fraud, "the complaint should inform each

15

defendant of the nature of his alleged participation in the fraud." DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir.1987).

The elements of common law fraud under New York law are: "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank, 57 F.3d 146, 153 (2d Cir.1995). "A fraudulent concealment claim shares these same elements with the additional requirement that a plaintiff must show that the defendant had a duty to disclose the material information." Woods v. Maytag Co., 807 F. Supp. 2d 112, 119 (E.D.N.Y. 2011). Similarly, under New York law, an action for fraudulent inducement requires the demonstration of: "(1) a material misrepresentation or omission that induced the party to sign the contract; (2) scienter; (3) reliance; and (4) injury." Davidowitz v. Patridge, 2010 WL 5186803, at *7 (S.D.N.Y. Dec. 7, 2010).

With respect to each of the Defendants, the Plaintiffs fail to plead particularized facts in support of their claims that the Defendants fraudulently concealed or induced them to enter into the loan and mortgage. See Simmons v. Bank of Am., N.A., 2014 WL 509386, at *4 (D. Md. Feb. 6, 2014) (dismissing virtually identical fraudulent inducement claims for failure to comply with Rule 9(b)); Somarriba v. Greenpoint Mortgage Funding, Inc., 2013 WL 5308286, at *4 (D. Md. Sept. 19, 2013) (same).

Most importantly, Plaintiffs do not meet an essential element a fraud claim, namely that the alleged misrepresentation that was made by the Defendants is material. Plaintiffs base their claim of fraud on their contention that the assignment "bears false signature." However, Plaintiffs are not parties or beneficiaries to the assignment. Thus, misrepresentations as to the

16

manner of assignment would not make any difference because the same debt would have been owed regardless of which entity held the Note.

Accordingly, the Court recommends that Plaintiffs' claim for fraudulent misrepresentation be dismissed with prejudice.

B.   Intentional Infliction of Emotional Distress Claim

"Under New York law, the tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Restis v. Am. Coal. Against Nuclear Iran, Inc., 53 F.Supp.3d 705, 729, No. 13 CIV. 5032(ER), 2014 WL 5089413, at *18 (S.D.N.Y. Sept. 30, 2014) (citing Bender v. City of New York, 78 F.3d 787, 790 (2d Cir.1996)). "In New York, a cause of action for intentional infliction of emotional distress accrues on the date of injury and carries a one year statute of limitations." Fournier v. Bank of Am. Corp., 2014 WL 421295, at *9 (N.D.N.Y. Feb. 4, 2014) (citations and quotation marks omitted).

Here the Court finds that Plaintiffs have failed to plausibly allege the type of "extreme and outrageous conduct" that can give rise to a common law claim for intentional infliction of emotional distress.

Indeed, "New York sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress." Bender, 78 F.3d at 790; see also Gay v. Carlson, 60 F.3d 83, 89 (2d Cir. 1995) ("We have noted that New York courts have been 'very strict' in applying these elements.") (quoting Martin v. Citibank, N.A., 762 F.2d 212, 220 (2d Cir. 1985)). As the Second Circuit recognized in Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999), New York courts have found liability for intentional infliction of emotional

17

distress "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Id. at 827 (internal quotation marks omitted) (quoting Howell v. N.Y. Post Co., 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993) (quoting Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983))).

The Plaintiffs' claim is defective because it is anchored to the Plaintiffs' attack on the mortgage foreclosure process. Plaintiffs allege that their emotional distress is derived from the fear of losing their home in the pending foreclosure proceedings and suffering financial injury as a repercussion of such a foreclosure. Plaintiffs fail to allege, and there is no indication of, any material representation made to the Plaintiffs that induced Plaintiffs reliance. As such Plaintiffs' allegations of fraud fail to surmount the heightened pleading standard imposed by Federal Rule of Civil Procedure 9(b). Accordingly, this Court recommends dismissing Plaintiffs' claim of intentional infliction of emotional distress with prejudice.

IV.     Leave to Amend

The Second Circuit has cautioned that, when a liberal reading of a pro se complaint "gives any indication that a valid claim might be stated," the district court should not dismiss the complaint without granting leave to amend. Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted); see Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  It is well settled, however, that "leave to amend a complaint need not be granted when amendment would be futile." Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003); see Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (holding that a "futile request to replead,"

18

even by a pro se litigant, "should be denied"). An amendment is "futile" if the proposed pleading would not withstand a motion to dismiss. See Jones v. Phelps Corp., 2014 WL 2195944, at *3 (N.D.N.Y. May 22, 2014). Thus, the proposed amended complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Barnhart v. Town of Parma, 252 F.R.D. 156, 158 (W.D.N.Y. Sept. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Applied here, the Court recommends that Plaintiff should be denied leave to amend his claims. Plaintiffs cannot include additional allegations that would give this Plaintiffs the requisite standing to assert their claims. Accordingly, this Court respectfully recommends that Plaintiffs be denied leave to file a second amended complaint.

V.      Plaintiffs' Motion for Declaratory Judgment

As this Court recommends granting Defendants' motions to dismiss with prejudice, Plaintiff' motion for a declaratory judgment is thus rendered moot. Therefore, this Court recommends denying Plaintiffs' declaratory judgment motion as moot.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Defendants' motions to dismiss, found at docket entries No. 149 and No. 153, be granted with prejudice and without leave to replead as any amendment would be futile. Further, this Court respectfully recommends denying Plaintiffs' motion for a declaratory judgment, found at docket entry No. 167, as moot.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to Defendants' counsel and Plaintiff via ECF. Furthermore, the Court directs Defense counsel to (1) to serve a copy of this Report and Recommendation by first class mail to Plaintiff at his last known addresses, and (2) to file proof of service on ECF by June 27, 2019. Any written objections to this Report and

Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

Dated: Central Islip, New York
       June 25, 2019

                                                   /s/ Anne Y. Shields
                                                 Anne Y. Shields
                                                 United States Magistrate Judge